# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN RAUL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLERGAN PLC, BRENTON L. SAUNDERS, NESLI BASGOZ, JOSEPH H. BOCCUZI, CHRISTOPHER W. BODINE, ADRIANE M. BROWN, CHRISTOPHER J. COUGHLIN, CAROL ANTHONY DAVIDSON, THOMAS C. FREYMAN, MICHAEL E. GREENBERG, ROBERT J. HUGIN, and PETER J. MCDONNELL,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jonathan Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Allergan plc ("Allergan" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Allergan and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Allergan and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to AbbVie Inc. ("AbbVie") (the "Proposed Transaction") through AbbVie's wholly owned subsidiary Venice Subsidiary LLC ("Merger Sub").

2.      On June 25, 2019, Allergan entered into an Agreement and Plan of Merger (the "Merger Agreement") with AbbVie, whereby AbbVie will purchase the Company.  Pursuant to the Merger Agreement, each of the Company's shareholders will be entitled to receive $120.30 in cash and 0.8660 of a newly issued share of AbbVie common stock (the "Merger Consideration").

3.      On September 16, 2019, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Allergan and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Allergan shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   Additionally, the Company's shares trade on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Allergan shares.

9.      Defendant Allergan is an Ireland corporation with its principal executive offices located at Clonshaugh Business and Technology Park, Coolock, Dublin D17 E400, Ireland.  The Company's shares are traded on the NYSE under the symbol "BPL."

10.     Defendant Brenton L. Saunders ("Saunders") is and has been the Company's Chief Executive Officer and Chairman of the Board at all times during the relevant time period.

11.     Defendant Nesli Basgoz ("Bakker") is and has been a director of Allergan at all times during the relevant time period.

12.     Defendant Joseph H. Boccuzi ("Boccuzi") is and has been a director of Allergan at all times during the relevant time period.

13.     Defendant Christopher W. Bodine ("Bodine") is and has been a director of Allergan at all times during the relevant time period.

14.     Defendant Adriane M. Brown ("Brown") is and has been a director of Allergan at all times during the relevant time period.

15.     Defendant Christopher J. Coughlin ("Coughlin") is and has been a director of Allergan at all times during the relevant time period.

16.     Defendant Carol Anthony Davidson ("Davidson") is and has been a director of Allergan at all times during the relevant time period.

17.     Defendant Thomas C. Freyman ("Freyman") is and has been a director of Allergan at all times during the relevant time period.

18.     Defendant Michael E. Greenberg ("Greenberg") is and has been a director of Allergan at all times during the relevant time period.

19.     Defendant Robert J. Hugin ("Hugin") is and has been a director of Allergan at all times during the relevant time period.

20.     Peter J. McDonnell ("McDonnell") is and has been a director of Allergan at all times during the relevant time period.

21.     Defendants Saunders, Basgoz, Boccuzi, Bodine, Brown, Coughlin, Davidson. Freyman, Greenberg, Hugin, and McDonnell are collectively referred to herein as the "Individual Defendants."

22.    The Individual Defendants, along with Defendant Allergan, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23.    Allergan is a publicly traded master limited Company which owns and operates a diversified global network of integrated assets providing midstream logistic solutions, primarily consisting of the transportation, storage, processing and marketing of liquid petroleum products.

### The Company Announces the Proposed Transaction

24.    On May 10, 2019, Allergan jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

**AbbVie to Acquire Allergan in Transformative Move for Both Companies**

NORTH CHICAGO, Ill. and DUBLIN, June 25, 2019 /PRNewswire/ -- AbbVie Inc. (NYSE: ABBV) and Allergan plc (NYSE: AGN) announced that the companies have entered into a definitive transaction agreement under which AbbVie will acquire Allergan in a cash and stock transaction for a transaction equity value of approximately $63 billion, based on the closing price of AbbVie's common stock of $78.45 on June 24, 2019.

"This is a transformational transaction for both companies and achieves unique and complementary strategic objectives," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "The combination of AbbVie and Allergan increases our ability to continue to deliver on our mission to patients and shareholders. With our enhanced growth platform to fuel industry-leading growth, this strategy allows us to diversify AbbVie's business while sustaining our focus on innovative science and the advancement of our industry-leading pipeline well into the future."

"This acquisition creates compelling value for Allergan's stakeholders, including our customers, patients and shareholders. With 2019 annual combined revenue of approximately $48 billion, scale in more than 175 countries, an industry-leading R&D pipeline and robust cash flows, our combined company will have the opportunity to make even bigger contributions to global health than either can alone," said Brent Saunders, chairman and chief executive officer, Allergan. "Our fast-growing therapeutic areas, including our world class medical aesthetics, eye

care, CNS and gastrointestinal businesses, will enhance AbbVie's strong growth platform and create substantial value for shareholders of both companies."

**Strategic Rationale**

- **New growth platforms and leadership positions to diversify and expand revenue base:** The combined company will consist of several attractive franchises with leadership positions across immunology, hematologic oncology, medical aesthetics, neuroscience, women's health, eye care and virology. Allergan's product portfolio will be enhanced by AbbVie's commercial strength, expertise and international infrastructure.

- **Immediate scale and enhanced profitability for AbbVie's growth platform:** AbbVie's enhanced growth platform, comprised of growing and durable franchises across highly-attractive therapeutic areas, is expected to grow at a high-single digit annual growth rate well into the next decade, from more than $30 billion in 2020.

- **Financially attractive with immediate EPS accretion:** This transaction is expected to be 10% accretive to adjusted earnings per share over the first full year following the close of the transaction, with peak accretion of greater than 20%.[1] ROIC is expected to exceed AbbVie's cost of capital within the first full year.

- **Significant cash flow generation:** The success and scale of the combined commercial business ensures funding capacity and flexibility for simultaneous robust pipeline investment, debt reduction and capital return to shareholders. The combined companies generated $19 billion in operating cash flow in 2018.

**Structure and Governance**

Upon completion of the transaction, AbbVie will continue to be incorporated in Delaware as AbbVie Inc. and have its principal executive offices in North Chicago, Ill.  AbbVie will continue to be led by Richard A. Gonzalez as chairman and chief executive officer. Two members of Allergan's Board, including chairman and chief executive officer, Brent Saunders, will join AbbVie's Board upon completion of the transaction.

**Transaction Details**

Under the terms of the Transaction Agreement, Allergan Shareholders will receive 0.8660 AbbVie Shares and $120.30 in cash for each Allergan Share that they hold, for a total consideration of $188.24 per Allergan Share.[2] The transaction represents a 45% premium to the closing price of Allergan's Shares on June 24, 2019.

AbbVie anticipates that the Acquisition will provide annual pre-tax synergies and other cost reductions of at least $2 billion in year three while leaving investments in key growth franchises untouched. The synergies and other cost reductions will be a result of optimizing the research and early stage portfolio, and reducing overlapping R&D resources (~50%), driving efficiencies in SG&A, including sales and marketing and central support function costs (~40%), and eliminating redundancies in manufacturing and supply chain, and leveraging procurement spend (~10%). The synergies estimate excludes any potential revenue synergies.[3] AbbVie is expected to generate significant annual operating cash flow, which will support a debt reduction target of $15 to $18 billion before the end of 2021, while also enabling a continued commitment to Baa2/BBB or better credit rating and continued dividend growth.

It is expected that, immediately after the closing of the Acquisition, AbbVie Shareholders will own approximately 83% of AbbVie on a fully diluted basis and the Allergan Shareholders will own approximately 17% of AbbVie on a fully diluted basis.

The transaction is subject to the Conditions set out in Appendix III of the Rule 2.5 Announcement, including certain regulatory approvals and approval by Allergan's Shareholders.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

25.    On September 16, 2019, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

26.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.    However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Management's Financial Projections**

27.     The Proxy Statement contains projections prepared by Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

28.     The Proxy Statement notes that J.P. Morgan Securities LLC ("J.P. Morgan") reviewed certain information prepared by management concerning "the estimated amount and timing of cost savings and related expenses and synergies expected to result from the proposed transaction. . . ."   However, the Proxy Statement does not disclose the above-mentioned estimated amount and timing of cost savings and related expenses and synergies expected to result from the Proposed Transaction.

29.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding J.P. Morgan's Financial Opinion**

30.     The Proxy Statement contains the financial analyses and opinion of J.P. Morgan concerning the Proposed Transaction, but fails to provide material information concerning such.

31.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, for the two companies, the Proxy Statement fails to disclose: (i) terminal period unlevered free cash flows for both companies; (ii) implied terminal value multiples for the companies; and (iii) the inputs and assumptions with respect to the selected discount rate range of 8.5% to 9.5%.

32.     With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples for each company selected in J.P. Morgan's analysis.

33.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected in J.P. Morgan's analysis.

34.     With respect to J.P. Morgan's analysts price targets presented to the Board,  the Proxy Statement fails to disclose the research analysts reports presented for both Allergan and AbbVie.

35.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

37.     The Proxy Statement contains information concerning the background the Proposed Transaction, but fails to disclose material information concerning such.  Specifically, the Proxy Statement fails to disclose critical information concerning potential conflicts of interest related to the Company's insiders.

38.     For instance, while the Proxy Statement notes that Defendant Saunders and another member of the Company's Board will joining the Board of AbbVie following the

completion to the Proposed Transaction, the Proxy Statement fails to disclose whether any members of the Company's management will be continuing in their respective positions following the close of the Proposed Transaction.  Further, the Proxy Statement fails to disclose any details of employment related discussions and negotiations.

39.    In addition, at the time of the negotiation of the Proposed Transaction there was litigation pending against both Allergan and AbbVie.

40.    For instance, an active securities class action captioned *In re Allergan Generic Drug Pricing Securities Litigation*, Case No. 2:16-cv-9449 (D.N.J.) (the "Allergan Securities Class Action") is pending against Allergan and certain executive officers alleging violations of the federal securities laws.  On August 6, 2019, the court in the Allergan Securities Class Action denied defendants' motion to dismiss the second amended complaint in that action.  However, the Proxy Statement does not disclose any information concerning potential liability related to any pending securities litigation against Allergan, including the Allergan Securities Class Action. Moreover, the Proxy Statement fails to disclose that as a result of the Proposed Transaction, Defendant Saunders (who is s named defendant in the Allergan Securities Class Action) would benefit by the extinguishment of any potential derivative claims naming him as a personal defendant related to the alleged conduct in the Allergan Securities Class Action.

41.    In addition to the above, an active securities class action is pending against AbbVie captioned *Pippins v. AbbVie Inc.*, Case No. 2:18-cv-08225 (C.D. Cal.) (the "AbbVie Securities Class Action").  The AbbVie Securities Class Action was filed against AbbVie and certain of the Company's executives for violations of the federal securities laws.  However, the Proxy Statement fails to disclose any information concerning potential liability related to any pending litigation against AbbVie, including the AbbVie Securities Class Action.

42.     The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction without proper disclosures.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information

regarding, among other things, the financial projections for the Company.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they

were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Allergan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Allergan, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57.      In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.      Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 24, 2019                                   Respectfully submitted,


                                                           By: */s/ Joshua M. Lifshitz*
                                                           Joshua M. Lifshitz
                                                           Email: jml@jlclasslaw.com
                                                           **LIFSHITZ & MILLER LLP**
                                                           821 Franklin Avenue, Suite 209
                                                           Garden City, New York 11530
                                                           Telephone: (516) 493-9780
                                                           Facsimile: (516) 280-7376

                                                           *Attorneys for Plaintiff*